**Thomas M. COOK and Carol L. Cook, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–2055.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 15, 1996.

Decided Jan. 21, 1997.

Robert C. Shaver (argued and briefed), Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, for Plaintiffs-Appellants.

Gary R. Allen, Acting Chief (briefed), Murray S. Horwitz (argued), Charles E. Brookhart, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendant-Appellee.

Before: MARTIN, Chief Judge; KRUPANSKY and DAUGHTREY, Circuit Judges.

KRUPANSKY, Circuit Judge.

The plaintiffs-appellants, Thomas M. Cook ("Cook") and Carol L. Cook, a married couple ("the Cooks") have contested the district court's dismissal, for failure to state a claim, of their petition to quash an administrative summons issued by the Internal Revenue Service ("I.R.S." or "the Service"). The summons demanded production of certain third-party bank records sought in furtherance of an investigation of the Cooks' tax returns. The Cooks alleged that the summons should be quashed because notice thereof was served upon them one day out of rule dictated by 26 U.S.C. § 7609(a). The trial court rejected the Cooks' challenge, ruling inter alia that service of the I.R.S. notification one day beyond the statutory period imposed by 26 U.S.C. § 7609(a) did not prejudice the petitioners. The Cooks argue on appeal that the operative statute by its terms afforded no discretion to the trial court to excuse a technical failure by the I.R.S. to follow statutorily mandated notice procedures, and accordingly the summons should be set aside.

Subsequent to an I.R.S. investigation of possible criminal taxation violations by the Cooks and by American Metal and Plastics, Inc. (a corporation primarily owned and controlled by the Cooks) ("the corporation"), Thomas Cook pleaded guilty to two criminal informations, one which charged him with evasion of personal income taxes during the calendar year 1991 and the other which accused him of causing the corporation to underpay taxes due during the fiscal year which commenced June 30, 1989. Cook, who had served as the administrator of the estate of Bessie Sikkenga, his deceased mother in law, exploited his access to a Sikkenga checking account no. 1,301,094 at the State Bank of Caledonia (Michigan) by depositing corporate funds to avoid payment of personal income taxes and diverting the funds to his personal use. To implement the scheme he charged the diverted corporate funds against corporate income as fictitious business deductions.

Cook's plea agreement stipulated that he had effected additional tax evasions in his personal capacity and on behalf of the corporation during 1988 through 1991, which crimes constituted "relevant conduct" for sentencing purposes. Cook ultimately was sentenced on January 31, 1995 to serve 21 months in prison, to be followed by three years of supervised release. The sentencing court also imposed liability for unpaid taxes totalling $891,949 plus a $50,000 fine.

After Cooks' sentencing, the I.R.S. received intelligence which implicated Cook in additional embezzlements from the corporation, and laundering of the fraudulently converted proceeds through the Sikkenga account, which predated 1988. The ensuing I.R.S. investigation generated an administrative summons to the Bank of Caledonia ("the bank"), hand delivered to Assistant Vice President John R. DeVries on March 29, 1995, which directed the bank, as a third-party recordkeeper, to produce not later than April 21, 1995 all records and other items related to the Sikkenga account for the period January 1, 1984 through December 31, 1987. The summons reflected that the targets of the investigation were "Thomas M. and Carol L. Cook."

The I.R.S. must notify the investigation targets of the issuance of a related third-party recordkeeper summons in accordance with 26 U.S.C. § 7609(a), which posits in pertinent part:

(1) In general.—If—

(A) any summons described in subsection (c)[1] is served on any person who is a third-party recordkeeper,[2] and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,

then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

The Internal Revenue Code, 26 U.S.C. § 7609(a)(2), further posits that sufficient notice is afforded

if on or before such third day [following service of the summons on the third-party recordkeeper], such notice ... is mailed by certified or registered mail to the last known address of such person [who is entitled to notice][.]

Any person who is entitled to notice of a third party summons, such as the Cooks, may inaugurate a proceeding to quash that summons no later than the twentieth day following notification. 26 U.S.C. § 7609(b)(2). The Service sent notice to the Cooks via certified mail on March 30, 1995. The appellants timely filed their petition to quash the summons on April 18, 1995.

The parties have agreed that the I.R.S. posted, via certified mail, the statutorily required notification to the Cooks and their counsel within the three day period following service upon the Bank of Caledonia on March 29, 1995, as required by sections 7609(a)(1) and (2). However, the litigants have further stipulated that, because the summons set April 21, 1995 as the compliance date, the Cooks were statutorily entitled to notification at least 23 days prior to April 21, 1995; in other words, on or before March 29, 1995. The I.R.S. has conceded that it technically violated section 7609(a)(1) by mailing statutory notice to the Cooks on March 30, 1995, one day following the close of the legislatively mandated notification period. The Cooks have conceded that they suffered no actual prejudice as a consequence of the delayed notice, as they were able to initiate their petition to quash the summons in a timely manner and prior to the date of compliance commanded by the summons. Accordingly, the legal issue joined for resolution by this court is whether the pronouncement of section 7609(a)(1) is a procedural requirement that cannot be waived or if the district court possessed the discretion to excuse the

---

1. 26 U.S.C. § 7609(c)(1) embraces, *inter alia,* summonses served under section 7602(a)(2), which in turn empowers the I.R.S. to summon "any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or re-quired to perform the act, or any other person the Secretary may deem proper...."

2. The statutory definition of a "third-party recordkeeper" includes banks and other savings institutions. 26 U.S.C. § 7609(a)(3)(A).

I.R.S.'s technical failure to seasonably discharge its statutory notification obligation to the appellants, where no prejudice to the petitioners resulted from the government's default. This legal question is decided de novo by the appellate court. *United States v. Spinelle,* 41 F.3d 1056, 1057 (6th Cir.1994); *Ponsford v. United States,* 771 F.2d 1305, 1308 (9th Cir.1985). If the trial court possessed discretionary power to excuse the government's technical default, this reviewing court will disturb that decision only if it constituted an abuse of discretion, which "exists [only] when the reviewing court is firmly convinced that a mistake has been made." *Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995).

■ Generally, upon a challenge to ·an I.R.S. summons:

the government bears the initial burden of establishing a prima facie case of "good faith" by showing that the summonses: 1) were issued for a legitimate purpose; 2) seek material relevant to that purpose; 3) seek material that is not already in the government's possession; and 4) satisfy all administrative steps required by the United States Code. *Kondik v. United States,* 81 F.3d 655, 656 (6th Cir.1996), *citing, inter alia, United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

■ The instant appeal concerns element no. 4 of the above test—to wit, did the Service's procedural error constitute a breach of an essential administrative step which compels invalidation of the summons?

■ This is an issue of first impression within this circuit. To determine a resolution the court initially examines the statutory language itself. *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). Section 7609(a)(1), quoted *supra,* dictates that the required notice "*shall be given* to any person so identified [as a target of the investigation] within 3 days of the day on which service is made [upon the third-party recordkeeper], but *no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.*" (Emphasis add-

ed). The word "shall" is "the language of command" which usually, although not always, signifies that Congress intended strict and nondiscretionary application of the statute. *Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 820, 79 L.Ed. 1566 (1935). Thus, it would appear that Congress has unequivocally commanded that the I.R.S. afford 23 days notice, not something less, to a target of an I.R.S. investigation that a summons has been issued to a third party recordkeeper to produce the target's documents. The I.R.S. possesses no discretionary authority to give the subject of an investigation less than 23 days notice. However, Congress has *not* evidenced an intention to render *void* every third party summons which does not comply with every technical stricture of section 7609. Given the public interest at stake in effective and efficient enforcement of the national revenue laws, this court will not impute such an intention to Congress in the absence of a clear legislative statement.

■ A more equitable resolution would confer discretion upon the trial courts to excuse the Service's technical notification default *if, and only if,* the party (or parties) entitled to statutory notification was (or were) not substantially prejudiced by the violation—that is, if the error was harmless. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 600 (6th Cir.1994) (nonprejudicial errors in administrative procedures mandated by section 7609(f) concerning "John Doe" summonses ruled not fatal to the summons), *cert. denied,* —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). In the instant case, the Cooks were not precluded from filing their timely motion to quash the summons prior to the date set for the production of the Sikkenga account records in possession of the bank despite the government's untimely notice. The Cooks had realized every benefit due to them under the statute. Indeed, the appellants have stipulated that they suffered no actual prejudice resultant from the tardy notification.

In the instant case it would have been an exercise in futility for the district court to quash the summons here in controversy solely because of a nonprejudicial technical oversight, after the Cooks had in fact already

presented to the court in a timely manner their various objections to the summons, because such an order would merely have compelled the I.R.S. to re-issue the summons to the bank, this time accompanied by 23 days notice to the Cooks instead of 22 days. This court will not compel a futile and pointless duplication of effort by the government, the attendant waste of public resource and those of the bank, and the concomitant delay of a criminal investigation which would flow from a rigid formal adherence to statutory notification requisites divorced from the realities of the particular case. *Accord, Sylvestre v. United States,* 978 F.2d 25 (1st Cir.1992), *cert. denied,* 507 U.S. 994, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993); *United States v. Texas Heart Institute,* 755 F.2d 469 (5th Cir.1985), *overruled on other grounds by United States v. Barrett,* 837 F.2d 1341 (5th Cir.1988) (en banc) (per curiam), *cert. denied,* 492 U.S. 926, 109 S.Ct..3264, 106 L.Ed.2d 609 (1989).

This court stresses that it rules *only* that the district courts possess discretionary authority to excuse the Service's technical notice errors where the party in interest suffered no actual prejudice. However, this opinion must not be construed as investing the I.R.S. with a license to ignore statutory deadlines or to negligently violate other legal requirements. This court is disturbed by a history of I.R.S. irresponsibility in honoring and respecting filing requirements which borders upon an expression of arrogant immunity from executive, legislative, and judicial mandates. For example, in this very case wherein a filing deadline is joined in issue, the record discloses a disconcerting pattern of inexcusable neglect by the Service and its attorneys in discharging legally mandated obligations. Pursuant to a stipulation by the parties, a magistrate judge extended the time for the government's reply to the Cooks' April 18, 1995 petition to quash the summons, accompanied by the proviso that "no further extension will be granted." Although the magistrate set June 29, 1995 as the response deadline, the Service, without a timely motion for an extension, did not attempt to file its purported opposition (a Motion to Dismiss the petition) until June 30, 1995. The district court rejected this filing on July 6, 1995 because it violated Local Rule

24(c) of the United States District Court for the Western District of Michigan, which requires the submission of an original plus one copy of all filings. The I.R.S. did not correct its procedural error until July 12, 1995. Although default was entered against the government on August 14, 1995, the district court on August 18, 1995 set aside that default on the rationale that the petitioners had not been prejudiced by the Service's delay. In the court of appeals, the government filed its appellee's brief one day late.

This court has recently admonished the I.R.S. in a different context (that of special hearing procedures commanded by 26 U.S.C. § 7609(f) respecting "John Doe" summonses) that it must satisfy technical legal conditions or otherwise risk adverse consequences:

> [B]ecause of the unique facts of this case we will not require the IRS to start the process all over.... [T]he statutory protections to which Ritchie's clients are entitled have been afforded them in spirit, even if not by compliance with the letter of the law. [Note]. At this stage of the proceedings, it would exalt form over substance to make the IRS go through the motions of having an ex parte court proceeding, getting the summons issued, serving it, defending a motion to quash, and filing a motion for enforcement, all to bring us back where we are now. [Note]. We are not suggesting that the IRS may in the future avoid going through the ex parte proceeding required by § 7609(f), for now the IRS has fair notice that if it cannot demonstrate a bona fide interest in investigating the tax liability of the party summoned, it must comply with § 7609(f). *United States v. Ritchie,* 15 F.3d 592, 600 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994).

Although this court, on the facts of the instant case, will excuse the government's technical default for the reasons evolved herein, the Service would be well advised in the future to heed the warning of *Ritchie,* which this court now amplifies. This court shall review future violations of technical legal requirements by the I.R.S. and its agents and attorneys with an increasingly critical

eye. *Accord, United States v. Gertner,* 65 F.3d 963 (1st Cir.1995).

The judgment of the district court is hereby **AFFIRMED**.