OPINION OF THE COURT
Dan Lamont, J.
Petitioner brings this proceeding pursuant to CPLR article 78 seeking a judgment reversing, annulling and/or modifying the respondents’ administrative determination to recover $366,816 from petitioner in alleged Medicaid overpayments as set forth in a decision after hearing dated February 28, 2003. Respondents have filed an answer in opposition, and petitioner has filed a reply thereto.
Background
Petitioner is a residential health care facility. In October of 1988, respondent Department of Health (DOH) approved petitioner to operate an adult day health care (ADHC) program for 33 nonoccupant registrants. Petitioner began to operate the program with seven registrants with a total of 69 visits in 1988. Initially, petitioner transported the participants with its own handicap van. The costs of using its own van for transportation were reimbursed in petitioner’s nursing home Medicaid rate. On January 1, 1989, petitioner was authorized to seek Medicaid reimbursement for services rendered to Medicaid eligible ADHC program registrants.
Petitioner’s application for a Medicaid reimbursement rate for its ADHC program was based upon a budget of estimated *396 costs. Petitioner included estimated costs of $55,000 for transportation of its registrants in the ADHC program in its budgeted costs to be included in the Medicaid reimbursement rate. The estimate was based upon taxicab fares for registrants of $10 per trip with an estimate of 5,260 visits ($52,600) rounded up to $55,000. Through percentage increases, the budgeted amount went from $10 per trip in 1989 to $14 per trip in 1995.
Following its authorization to seek Medicaid reimbursement for services rendered to eligible ADHC program registrants on January 1, 1989, petitioner entered into contracts with outside ambulette transportation providers for transportation of the ADHC program registrants. The transportation providers were to bill the Medicaid program directly on a fee-for-service basis for providing these transportation services. Notwithstanding petitioner’s contracts with five outside ambulette services, petitioner still continued to utilize its own van from time to time during the audit period to transport ADHC registrants. The extent of the use of petitioner’s van is disputed by the parties. However, the costs of the vehicle and the driver were included in the nursing home’s books, and therefore, were included in petitioner’s inpatient Medicaid reimbursement rates.
At some point in time, the State Department of Social Services (DSS) became aware of the possibility that DSS may have been paying twice for the transportation of ADHC registrants— once through the facilities’ ADHC rate, and once on a fee-for-service basis from the ambulette transportation providers. By letter dated March 22, 1996, DSS informed petitioner that an audit would be conducted regarding its transportation costs for the ADHC program for the rate period January 1, 1992 to December 31, 1995, and that petitioner should make particular records available. Petitioner immediately raised an issue contending that DSS does not have the authority to conduct an audit of these costs since petitioner’s rate is based upon a budget — rather than upon actual costs. Petitioner has preserved said contention throughout the administrative process and this proceeding.
On September 26, 1996, an initial conference between DSS employees and petitioner’s employees was conducted. During the conference, DSS employee Anit Maitra informed petitioner that if the audit discovered that the transportation costs were only incidental, DSS would ask for transportation costs for 1989 through 1991 also. Petitioner’s representative immediately asserted that DSS had no authority to expand the period of the *397 audit without a written notification to that effect. DSS’ employee responded that a letter would be sent, but DSS did not send such letter.
On February 19, 1997, following the audit, an exit conference was held. Immediately prior to the exit conference, petitioner submitted a rate appeal to the DOH requesting that petitioner be provided with a cost-based rate. On March 31, 1997, DOH denied petitioner’s rate appeal and stated that the ADHC rate would continue to be based upon the approved budget.
On June 18, 1997, DSS issued a draft audit report advising petitioner that it had been overpaid $412,613 from the Medicaid rate years 1989 through 1995. DSS (1) removed the yearly $55,000 budgeted by petitioner for ADHC transportation costs based upon most of the transportation services being provided by outside contractors and billed to Medicaid on a fee-for-service basis by those providers; (2) acknowledged that petitioner did incur some transportation expenses through the use of its own vehicle transporting ADHC registrants; (3) determined that the transportation costs incurred by petitioner were reimbursed through its inpatient Medicaid rates; and (4) determined that petitioner had deleted transportation services from its ADHC program.
On September 8, 1998, a final audit was issued by DOH, which had taken over the audit functions from DSS, for the alleged overpayments associated with the 1989 through 1995 Medicaid rate years. The final audit basically confirmed the findings from the draft audit. DOH cited the following regulatory authority for its determination: (1) 10 NYCRR 86-2.27— the department was not notified that petitioner deleted its service for transporting the ADHC registrants by contracting out the services to outside companies, and (2) 10 NYCRR 86-2.17 (d) — the transportation costs were not reasonably related to the efficient production of services. The final audit report stated in writing that the purpose of the audit was to identify Medicaid overpayments associated with years 1989 through 1995. By letter dated October 29, 1998, petitioner requested an administrative hearing.
An administrative hearing was conducted on January 27, 2000, March 14, 2000, May 22, 2000, October 24, 2000, April 5, 2001, and February 7, 2002. The administrative record was closed June 28, 2002. On February 28, 2003, the Administrative Law Judge (ALJ) issued the decision after hearing.
The ALJ determined: (1) that DSS did have the requisite regulatory authority to conduct the audit and to adjust *398 petitioner’s ADHC program Medicaid reimbursement rate which was based upon budgeted costs; (2) that the statute of limitations prohibited the State from auditing the 1989 and 1990 rate years, but the State could audit the 1991 and later rate years based upon its notification contained within the June 18, 1997 draft audit report; and (3) that petitioner had deleted transportation services from its ADHC program. The ALJ established the Medicaid overpayment at $366,816.
Discussion
A) Auditing Authority of the Department of Social Services:
Petitioner contends that DSS had no regulatory authority to conduct an audit of its Medicaid rate because such rate was based upon budgeted costs rather than actual costs. Respondents contend that DSS has the authority to audit rates, pursuant to 18 NYCRR 517.3 and 10 NYCRR 86-2.7, set both by actual costs and budgeted costs — a contention which the ALJ adopted.
18 NYCRR part 517 applies to “Provider Audits.” 18 NYCRR 517.3 is labeled “Audit and record retention.” 18 NYCRR 517.3 (a) and (b) are labeled “Cost-based provider” and “Fee-for-service providers,” respectively. Petitioner’s contention revolves around the lack of any regulation denominated “budget-based provider,” whereas respondent simply contends that a rate set by either budgeted costs or actual costs is a rate subject to audit under the “cost-based provider” section (18 NYCRR 517.3 [a]). Pursuant to 10 NYCRR 86-2.9, Medicaid rates are set through the use of actual allowable costs (subd [a]), or upon annual budgeted allowable costs for facilities without adequate cost experience (subd [b]).
Section 7803 (3) of the Civil Practice Law and Rules succinctly provides that the standard of judicial review of an administrative determination is “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (see, Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ., 91 NY2d 133 [1997]). The Court of Appeals has defined an arbitrary determination as being “without sound basis in reason and . . . without regard to the facts” (see, Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]). Respondent’s interpretation of its own regulations is entitled to great deference unless it is unreasonable or irrational (see, Matter of Maggio v DeBuono, 277 AD2d 456 [2d Dept 2000]).
*399 The ALJ made the following findings: (1) reimbursement rates are commonly set prospectively by using actual costs reported from a facility — if such reported costs are found to be inaccurate after an audit, the reimbursement rates may be retroactively revised (cost based rate); (2) where a new ADHC program has no actual cost experience, a reimbursement rate is determined through the submission of a budget of estimated costs (budget based rate); (3) a budget based rate is used until a facility or program has an actual cost history and reaches an occupancy or utilization of 90% or higher; and (4) petitioner did not qualify for a cost based rate during the relevant time period.
Respondents’ determination that 18 NYCRR 517.3 provided DSS with the authority to conduct an audit of petitioner’s Medicaid reimbursement rate, which was undisputably based upon estimated budgeted costs, was based upon the fact that the regulation does not address “budgeted rates” specifically and does not address what kinds of “rates” are subject to audit. Respondents determined that the regulation’s subdivision headings: “Cost-based provider” and “Fee-for-service providers” did not refer to the type of rates, but rather to the type of providers, and that the rates set under the “cost based method” or “the budget based method” were both rates established through the use of a facility’s costs (either actual past costs or estimated future costs). Respondents finally determined that since both cost based rates and budget based rates were determined through the use of costs submitted by the service provider, either type of rates could be audited under 18 NYCRR 517.3 (a)— “Cost-based provider.” While petitioner’s argument is not entirely lacking in merit, under the applicable standard of review, this court holds and determines that respondents’ determination that DSS had the authority to audit petitioner was reasonably and rationally based and adequately expressed in the ALJ’s determination (see, Pell v Board of Educ., supra).
B) Statute of Limitations for Rate Year 1991:
Petitioner contends that DSS failed to provide proper, timely notice of its intent to audit the 1991 rate year until after the applicable statute of limitations (six years from the filing of the cost report for that year) had expired. Respondents contend, and the ALJ determined, that the draft audit report issued on June 17, 1997 provided proper and timely notice of the intent to audit the 1991 rate year.
18 NYCRR 517.3 (c) states:
*400 “Notification by the department to the provider of the department’s intent to audit shall toll the six-year period for record retention and audit. The department shall not notify a provider of its intent to audit more than six years from the date of filing of the fiscal and statistical reports to be audited or six years from the date they were required to be filed, whichever is later. The audit shall begin within 60 days of such written notification of intent to audit.”
The following facts are undisputed: (1) DSS’ March 22, 1996 letter informed petitioner that an audit of rate years 1992 through 1995 would be conducted; (2) on September 26, 1996, at the opening conference, DSS orally informed petitioner that the audit would be expanded to include the earlier years including the 1991 rate year; (3) no written notification in the form of an additional letter or amended letter was ever sent by DSS advising petitioner of the expansion of the audit period; and (4) DSS’ draft audit report, dated June 17, 1997, contained references to rate years 1989 through 1995. Despite petitioner’s arguments to the contrary, this court holds and determines that the draft audit report clearly put petitioner on notice that DSS was expanding the scope of its audit. Whether such written notification was sufficient under the applicable regulations is not so clear.
The instant scenario constitutes another example of where an agency of the State has failed to follow its own regulations to the letter. As accurately stated by one of DSS’ employees, DSS should have provided written notification in the form of an additional letter to petitioner expanding the scope of the audit to the earlier years. This court must determine whether respondents’ interpretation of the notice provisions of 18 NYCRR 517.3 (c) was reasonably and rationally based (see, Matter of County of Rockland v Axelrod, 157 AD2d 960 [3d Dept 1990]). Respondents determined that six years had not elapsed before June 17, 1997, since the petitioner’s cost report was due by May of 1992 — and that the draft audit report afforded petitioner an opportunity to produce records to substantiate transportation costs for that year. The ALJ did not address petitioner’s argument that notice of an audit cannot be given after an audit has already been conducted — i.e., that a written notification must provide notice of an “intent to audit.”
18 NYCRR part 517 sets forth a comprehensive procedure for conducting audits: (1) 18 NYCRR 517.3 (a) and (b), providing *401 authority for the audits; (2) 18 NYCRR 517.3 (c), detailing the notice required before commencing an audit; (3) 18 NYCRR 517.3 (d), setting forth a limited period of time in which to commence an audit following notification; (4) 18 NYCRR 517.3 (e), allowing for extensions of time within which to commence an audit; (5) 18 NYCRR 517.3 (f), providing for an entrance conference between the department and the facility to discuss the nature and extent of the audit; (6) 18 NYCRR 517.5 (a), providing for the preparation of a draft audit report after affording the provider the opportunity for a closing conference upon completion of an on-site field audit and after consideration of any additional documentation and information presented therewith) and (7) 18 NYCRR 517.6, providing for the preparation of a final audit report.
This court could find, standing alone, that respondents’ determination that the June 17, 1997 draft audit report constituted written notice that DSS would conduct an audit of the 1991 rate year was both reasonable and rational. However, upon reviewing the entire regulatory part, this court holds and determines that, even if DSS’ draft audit report constituted written notification of its intent to audit petitioner’s 1991 rate year, such notice of intent lapsed when DSS failed to commence an audit of the 1991 rate year within 60 days and failed to follow the procedural steps outlined in its own regulations. As argued by petitioner, the written notification is designed to notify providers of an intent to audit (see, 18 NYCRR 517.3 [c]), not a notification that an audit has been completed. To allow DSS to bypass the procedures outlined for an entrance conference (18 NYCRR 517.3 [f]) and a closing conference, including the opportunity to submit documentation before the preparation of a draft audit report (18 NYCRR 517.5), would deprive petitioner of the due process afforded by DSS’ own regulations.
This court holds and determines that DSS may not circumvent such regulations and procedures by filing a notice of intent to audit additional rate years in a draft audit report for other rate years. Following the filing of the draft audit report, including the rate year 1991, DSS did not afford petitioner any of the procedures between the “written notification” and the preparation of a “draft audit report.” This court further holds and determines that DSS did not commence its audit within 60 days of providing written notification to petitioner and that the effectiveness of such notice thereby lapsed (18 NYCRR 517.3 [d]). Accordingly, this court holds and determines that respondents *402 are precluded from recovering any overpayment for rate year 1991, and that this proceeding is remitted to the respondents for the limited purpose of adjusting the Medicaid overpayment in compliance herewith.
C) Termination or Deletion of Transportation Service:
10 NYCRR 86-2.27 states:
“The Division of Health Care Financing in the Department of Health shall be notified immediately of the deletion of any previously offered service or of the withholding of services from patients paid for by government agencies. Such notifications shall include a statement indicating the date of the deletion or withholding of such service and the cost impact on the residential health care facility of such action. Any overpayments by reason of such deletion of previously offered service shall bear interest and be subject to penalties both in the manner provided in section 86-2.7 of this Subpart.”
Petitioner’s 1988 Medicaid reimbursement application included estimated costs for the transportation of registrants in the ADHC program, and such requested costs were included in petitioner’s Medicaid reimbursement rates. The ALJ adopted respondents’ contention that petitioner deleted its transportation services when petitioner contracted those services to third-party providers on January 1, 1989 — which then billed Medicaid directly for such transportation services. Petitioner contends that such an interpretation is contrary to the meaning of the term “deletion” of service as interpreted by DOH and that DOH’s interpretation must be controlling. DOH does not consider the cost of providing services as a factor when determining whether a service has been deleted.
This court holds and determines that the respondents’ interpretation of “deletion of service” based upon whether petitioner incurred any cost for such service is wholly rational and reasonable (see, Pell v Board of Educ., supra). 10 NYCRR 86-2.27 specifically includes: “indicating the date of the deletion or withholding of such service and the cost impact on the residential health care facility” (emphasis supplied). By its own terms the regulation does not refer to the termination or deletion of an entire program — only a “service,” and was specifically created to address the reduction of costs inherent in deleting or terminating a “service.” The ALJ’s determination to accept Mr. Tighe’s interpretation over another DOH employee’s interpre *403 tation was not arbitrary and capricious and was clearly supported by the record wherein the other DOH employees’ testimony was determined to be relevant to “planning” and to “program” issues only. Such interpretation is also consistent with DSS’ previous administrative determinations in Matter of St. Camillus Residential Health Care Facility (respondents’ exhibit IV [A]) and Matter of Broadacres Skilled Nursing Facility (respondents’ exhibit IV [B]). Even if respondents’ determination herein was in fact driven by a “result-oriented determination” to recoup the costs of transportation services not provided by petitioner, such determination nevertheless has a rational basis and is supported by the record.
Petitioner also contends that the ALJ’s determination was arbitrary and capricious because petitioner did, in fact, incur some transportation expenses related to the ADHC program. The evidence clearly established that petitioner entered $0 for transportation costs in its cost report, but actually incurred some small amount of expense, through the use of its own vehicle to transport some ADHC registrants on an as-needed basis. Petitioner was not able to present any evidence that it used its own vehicle to transport any of the Medicaid eligible registrants — only private pay residents. Petitioner’s representative also testified that he originally told the auditors that petitioner “did not have any expenses for transportation,” but upon further review there were some small and not “overly significant” expenses for transportation incurred by the ADHC program.
This court further holds and determines that the ALJ’s determination — that the petitioner’s transportation expenses actually incurred were negligible (at most 1% of the program’s budgeted transportation needs), and insufficient to show that petitioner did not delete its transportation services — was also rational and reasonable. Petitioner’s own employee considered the transportation expenses “small” and not “overly significant”; such transportation expenses were not previously reported on the petitioner’s cost reports; and such transportation expenses were reimbursed to petitioner under its overall Medicaid rate for inpatients.
Petitioner’s contention that its budgeted rate could not be retroactively adjusted pursuant to Matter of Wellsville Manor Nursing Home v Axelrod (142 AD2d 225 [3d Dept 1988]) was also properly rejected by the ALJ. Petitioner’s contracting out the transportation services for the ADHC program to providers who then directly billed Medicaid does not justify petitioner in *404 retaining the budgeted moneys. Petitioner did not lower the costs of providing transportation services, but rather merely shifted the billing for those transportation services to third parties who billed Medicaid. Apart from its legal and procedural contentions hereinbefore discussed, petitioner essentially contends that respondents’ determination that Medicaid should not pay twice for ADHC program transportation services — once to the transportation services provider which actually furnished such transportation services, and again to petitioner in its ADHC program reimbursement rate — was arbitrary and capricious. This court holds and determines that the respondents’ determination that petitioner deleted its transportation services was rational and reasonable.
Conclusion
This court holds and determines that the petition should be and the same is hereby granted with respect to the overpayments for rate year 1991, and the matter hereby is remitted to respondents for the limited purpose of adjusting the total overpayments by eliminating rate year 1991. This court further holds and determines that the remainder of the petition should be and the same is hereby denied and dismissed without costs.