# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 3, 2013            Decided July 23, 2013

No. 12-5179

GENTIVA HEALTHCARE CORPORATION, DOING BUSINESS AS
HERITAGE HOME HEALTH,
APPELLANT

v.

KATHLEEN SEBELIUS, SECRETARY, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00438)

*Robert L. Roth* argued the cause for appellant. With him on the brief was *Patric Hooper*.

*Adam C. Jed*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Mark B. Stern*, Attorney.

Before: GARLAND, *Chief Judge*, BROWN, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Gentiva Healthcare Corporation is a provider of home health-care services. Gentiva contends that the Secretary of Health and Human Services violated the Medicare statute by delegating to an outside contractor the authority to determine whether Gentiva's Medicare reimbursement claims exhibited a "sustained or high level of payment error." 42 U.S.C. § 1395ddd(f)(3). We conclude that the Secretary reasonably construed the statute to permit such a delegation.

I

The Medicare program is administered by the Secretary of the Department of Health and Human Services (HHS). 42 U.S.C. § 1395kk(a). By statute, the Secretary may "perform any of [her] functions under" the Medicare program "directly, or by contract . . . , as the Secretary may deem necessary." *Id.* Although the Secretary's functions under the Medicare program are many, this appeal concerns her role in administering the Medicare Integrity Program. Created in 1996, that Program directs the Secretary to "promote the integrity of the medicare program by entering into contracts" with "eligible entities" to carry out specified "activities." *Id.* § 1395ddd(a); *see* Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, § 202, 110 Stat. 1936, 1996 (1996). Included among those activities are the "[r]eview of activities of providers of services" and the "[a]udit of cost reports." 42 U.S.C. § 1395ddd(b)(1), (2).

At the core of this appeal are amendments to the Medicare Integrity Program that Congress enacted in 2003. *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 935, 117 Stat. 2066, 2407. Under the amended statute, the Secretary may use outside contractors to determine whether the Medicare program has overpaid a

health-care services provider. However, "[a] medicare contractor may not use extrapolation to determine overpayment amounts to be recovered . . . unless the Secretary determines that . . . there is a sustained or high level of payment error." 42 U.S.C. § 1395ddd(f)(3). The statute further provides that "[t]here shall be no administrative or judicial review . . . of determinations by the Secretary of sustained or high levels of payment errors." *Id.*

In 2007, a Medicare contractor, Cahaba Safeguard Administrators, initiated a review of reimbursement claims that Gentiva submitted to Medicare for home health-care services it provided to patients from July 1, 2005 to November 30, 2006. Cahaba found that 58% of those claims had been at least partially denied by the Medicare program for failure to comply with Medicare coverage requirements. Cahaba also noted that the payments Gentiva received per beneficiary served were high compared to the average payment received by providers in Gentiva's region. Based on these observations, Cahaba determined that Gentiva's claims exhibited a "sustained or high level of payment error." *See* Decision of Administrative Law Judge at 16, *Appeal of Gentiva Health Services* (Apr. 28, 2010) (J.A. 75) ("ALJ Decision").

Cahaba proceeded to draw a sample of 30 claims. Of these, it initially determined that 26 claims -- nearly 87% of the sample -- were overpaid. Extrapolating this error rate over all of the relevant claims, Cahaba determined that Medicare had overpaid Gentiva by $4,242,452.10. After Gentiva successfully challenged Cahaba's overpayment determination as to ten of the claims in the sample, Cahaba revised its extrapolation and calculated a lower overpayment principal of $2,112,778.00. *See* ALJ Decision at 1-2.

Before an HHS Administrative Law Judge (ALJ), Gentiva challenged Cahaba's overpayment determination as to ten more claims in the sample. Gentiva also charged that Cahaba's sampling and extrapolation method was itself invalid. The ALJ agreed with Gentiva that the ten identified claims had not been overpaid and directed that the extrapolation be recalculated accordingly. But the ALJ upheld as valid the statistical sampling and extrapolation methodology that Cahaba used. *See* ALJ Decision at 20-21.

Gentiva appealed the ALJ's approval of Cahaba's use of extrapolation to the Medicare Appeals Council of HHS' Departmental Appeals Board. Gentiva "advance[d] only one contention" before the Appeals Council: that 42 U.S.C. § 1395ddd(f)(3) barred Cahaba -- or any outside contractor -- from making the "sustained or high level of payment error" finding that is a prerequisite for using statistical extrapolation to calculate an overpayment amount. Decision of Medicare Appeals Council at 2, *In the case of Gentiva Healthcare Corp.*, Dkt No. M-11-488 (Jan. 27, 2011) (J.A. 47). Specifically, Gentiva argued that:

> because Congress used the terminology 'a [M]edicare contractor' and 'the Secretary' in the same sentence, it intended that the Secretary herself make a determination of a sustained or high level of payment error and, therefore, the Secretary may not assign or delegate this function to a contractor.

*Id.* at 2-3. The Appeals Council, however, rejected Gentiva's proposed reading of § 1395ddd(f)(3) as "unduly narrow" in light of § 1395kk(a)'s "broad authority" for the Secretary to perform any of her Medicare functions "directly, or by contract." *Id.* at 5 (quoting 42 U.S.C. § 1395kk(a)). The Council concluded that "[t]he Secretary has delegated her authority" to determine that

extrapolation is warranted "to a program integrity contractor, and that contractor . . . has made a valid determination under the Act." *Id.* at 6.

Gentiva challenged the Medicare Appeals Council's decision in district court. *See* 42 U.S.C. § 1395ff(b)(1)(A). Gentiva argued that the Secretary erred in concluding that a contractor could make the "sustained or high level of payment error" determination required by § 1395ddd(f)(3). In the alternative, Gentiva argued that Cahaba's determination was not supported by substantial evidence. The court granted summary judgment for the Secretary.

Applying the framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the court first concluded that, "[i]n the absence of any explicit indication that the § 1395ddd(f)(3) 'sustained or high level of payment error' determination was intended as an exception to" the Secretary's "broad power" to delegate to contractors under § 1395kk(a), it could not find "that 42 U.S.C. § 1395ddd(f)(3) unambiguously forecloses subdelegation." Mem. Op. at 14, *Gentiva Healthcare Corp. v. Sebelius*, No. 11-cv-438 (Apr. 6, 2012) ("Dist. Ct. Op."). Turning to *Chevron*'s second step, the court concluded that the Secretary's interpretation of § 1395ddd(f)(3) as "permitting -- or, at least, as not prohibiting -- subdelegation to Medicare contractors of the 'sustained or high level of payment error' determination" was reasonable and therefore warranted deference. *Id.* at 16. Finally, the district court found it was without jurisdiction to hear Gentiva's "alternative argument concerning the substance of" Cahaba's "sustained or high level of payment error" determination, given § 1395ddd(f)(3)'s express instruction that "'[t]here shall be no administrative or judicial review . . . of determinations by the Secretary of sustained or high levels of payment errors.'" *Id.* at

22 (quoting 42 U.S.C. § 1395ddd(f)(3)). Gentiva filed a timely notice of appeal to this court.

## II

On appeal, Gentiva challenges the district court's decision to defer to the Secretary's construction of § 1395ddd(f)(3) as permitting her to delegate to a contractor the determination of a "sustained or high level of payment error." It also challenges the court's holding that the statute bars review of the merits of that determination. We review the district court's grant of summary judgment on these issues de novo. *See Arizona v. Thompson*, 281 F.3d 248, 253 (D.C. Cir. 2002).

## A

First, we agree with the district court that review of the Secretary's construction of § 1395ddd(f)(3), as articulated in the Medicare Appeals Council proceeding, is governed by the standard of review enunciated in *Chevron*. *See AKM LLC v. Sec'y of Labor*, 675 F.3d 752, 754 (D.C. Cir. 2012) (noting that the *Chevron* standard applies, "even if the Secretary's interpretation arises in an administrative adjudication rather than in a formal rulemaking process" (citing *Martin v. OSHRC*, 499 U.S. 144, 157 (1991))). Under that standard, we must defer to the Secretary's statutory interpretation "so long as the statute[] . . . in question [is] ambiguous and the Secretary's interpretation[] [is] reasonable." *Id.* In this case, the statute is not unambiguous and the Secretary's reading is not unreasonable. Hence, although we believe Gentiva may have the better reading of § 1395ddd(f)(3), we must defer to the Secretary. *See Allied Local and Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 71 (D.C. Cir. 2000) ("Under *Chevron*, we are bound to uphold agency interpretations as long as they are reasonable -- 'regardless whether there may be other reasonable, or even more

reasonable, views.'" (quoting *Serono Lab., Inc. v. Shalala*, 158 F.3d 1313, 1321 (D.C. Cir.1998))).

Gentiva argues that 42 U.S.C. § 1395ddd(f)(3) unambiguously requires the Secretary -- and not a contractor -- to make the "sustained or high level of payment error" determination. This is so, Gentiva argues, because the statute provides that "[a] medicare contractor may . . . use extrapolation," but that "the Secretary determines" whether extrapolation is warranted in the first place. But even Gentiva concedes that "Secretary" does not always mean "Secretary." As counsel acknowledged at oral argument, under our precedent the Secretary may delegate the "sustained or high level of payment error" determination to another HHS official. Oral Arg. Recording at 9:24 - 9:37; *see U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent.").

Gentiva is right that delegations to non-governmental entities are different and may even be "assumed to be improper absent an affirmative showing of congressional authorization." *U.S. Telecom Ass'n*, 359 F.3d at 565. *Cf. Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, __ F.3d __, 2013 WL 3305715, at *3 (D.C. Cir. July 2, 2013) (noting that, although a statute may not "empower[] private parties to wield regulatory authority[,] [s]uch entities may . . . help a government agency make its regulatory decisions"). But here, Congress has provided such an affirmative showing in § 1395kk(a), which expressly authorizes the Secretary to "perform *any* of [her] functions under this subchapter directly, or by contract . . . , as the Secretary may deem necessary." 42 U.S.C. § 1395kk(a) (emphasis added). Because there is no dispute that the "sustained or high level of

payment error" determination is a "function" subject to delegation within the meaning of § 1395kk(a), Oral Arg. Recording at 4:32 - 4:37 (acknowledgment by Gentiva's counsel), we cannot find that Congress unambiguously barred the Secretary from delegating that task to an outside contractor. Nor, given § 1395kk(a)'s breadth, can we find the Secretary's construction unreasonable. *See Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 943 (D.C. Cir. 1982) (referring to § 1395kk(a)'s "broad scope," and noting that its "clear and reasonable language appears to give the Secretary the unequivocal right to designate [contractors] to perform [her Medicare] reimbursement functions").

As we discuss in Part II.B below, Congress has insulated from judicial review the merits of the Secretary's "sustained or high level of payment error" determination. This fact does not, however, alter our conclusion that the Secretary may delegate that determination to a contractor. The determination that there was a sustained or high level of payment error is only a screening mechanism employed to decide whether extrapolation may be used to calculate a final overpayment amount. Providers like Gentiva can still challenge -- at the agency level and in court -- both the final overpayment calculation and the extrapolation methodology that was used to calculate it. *See* Oral Arg. Recording at 21:42 - 23:11 (acknowledgment by HHS' counsel). Indeed, Gentiva successfully overturned every individual overpayment claim that it challenged before the Medicare Appeals Council. In so doing, it succeeded in cutting the contractor's overpayment calculation in half, from a little more than $4 million to a little more than $2 million, without overturning the "sustained or high level of payment error" determination. *See* ALJ Decision at 1. Given that this significant level of review of final overpayment calculations remains available, it is not unreasonable for the Secretary to

believe that Congress intended to permit contractors to make unreviewable determinations at the screening level.[1]

Gentiva may well be right that reserving the screening function to agency personnel would better effectuate Congress' apparent desire to give the Secretary more oversight over contractors' use of extrapolation. But even a desirable statutory interpretation cannot trump an agency's reasonable interpretation under *Chevron*. *See Allied Local*, 215 F.3d at 71. We therefore affirm the district court's decision to defer to the Secretary's interpretation of § 1395ddd(f)(3).

B

We also agree with the district court that § 1395ddd(f)(3) precludes us from reviewing the merits of the "sustained or high level of payment error" determination that permitted the contractor to use extrapolation to calculate overpayment amounts in this case. Because that question goes to our own jurisdiction, *Chevron* does not apply, and we must decide the appropriate construction of the statute de novo. *See NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013). But like the district court, we read the statute's directive, that "[t]here shall be no administrative or judicial review . . . of determinations by the Secretary of sustained or high levels of payment errors," as clearly precluding our review. *See* Dist. Ct. Op. at 22-23. Moreover, given our conclusion that § 1395kk(a) authorizes the Secretary to delegate the making of such

---

[1] We note that the Secretary has also provided contractors with guidance regarding the procedures they should follow in making the "sustained or high level of payment error" determination. *See* HHS, Medicare Program Integrity Manual, Pub. 1008-08, Trans. 114 (June 10, 2005), *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R114PI.pdf.

determinations to contractors, we are unpersuaded by Gentiva's contention that the preclusion of review applies only when the Secretary makes the determination herself.

## III

For the foregoing reasons, the judgment of the district court is

*Affirmed.*